IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**LINDA LOU DAWSON, individually and
in her Capacity as Executor of the
Estate of Ronald Wade, Deceased,**

      **Plaintiff,**

v.  //   CIVIL ACTION NO. 1:11CV114
                                    (Judge Keeley)

**UNITED STATES OF AMERICA,**

      **Defendant.**

**MEMORANDUM ORDER AND OPINION GRANTING IN PART
THE PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT [DKT. NO. 46]**

Before the Court is that portion of the Motion for Partial Summary Judgment of the plaintiff, Linda Lou Dawson ("Dawson"), Executor of the Estate of Ronald Wade, Deceased ("Wade"), seeking a determination of the types of damages available under the Federal Torts Claims Act ("FTCA"), 28 U.S.C. § 2671 et seq. (Dkt. No. 46). For the reasons stated on the record during oral argument on May 21, 2013, and those that follow, the Court **GRANTS IN PART** that portion of the Plaintiff's Motion, concluding, as a matter of law, that compensatory damages for Wade's pre-death pain and suffering are available to Dawson under the FTCA.

I.

As it must on a motion for summary judgment, the Court reviews all evidence in the light most favorable to the government, the nonmoving party. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23

**DAWSON v. UNITED STATES OF AMERICA**                        **1:11CV114**

**MEMORANDUM ORDER AND OPINION GRANTING IN PART
THE PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT [DKT. NO. 46]**

(1986). Dawson is the daughter of the decedent, Ronald Wade ("Wade"), a veteran who underwent surgery for bladder cancer at the Louis A. Johnson Veterans Administration Medical Center in Clarksburg, West Virginia (the "Clarksburg VA"), in 2007. Wade later died of COPD in 2009, while residing in the extended care facility at the Clarksburg VA.

**A.**

In February, 2005, a urologist on the medical staff at the Clarksburg VA diagnosed Wade with carcinoma-in-situ of the bladder. (Dkt. Nos. 46-1 at 2; 47 at 4). After two years of conservative treatment for bladder cancer, Douglas McKinney, MD ("McKinney"), another urologist on the medical staff of the Clarksburg VA, concluded that Wade's cancer had progressed to Stage IV and recommended that he undergo a radical procedure known as a cystoprostatectomy. During a cystoprostatectomy, the bladder is removed and an ileal conduit is created to allow urine to exit the body to an external ostomy. (Dkt. No. 46-1 at 3). Wade acquiesced to McKinney's recommendation, and McKinney performed the cystoprostatectomy on October 1, 2007.

The parties dispute the necessity of the cystoprostatectomy. Dawson contends that it was wholly unnecessary because, at the time

**DAWSON v. UNITED STATES OF AMERICA**                  **1:11CV114**

**MEMORANDUM ORDER AND OPINION GRANTING IN PART
THE PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT [DKT. NO. 46]**

McKinney operated, Wade did not suffer from Stage IV bladder cancer. (Dkt. No. 46-1 at 3). She maintains that the post-operative pathology report locates Wade's cancer in the urethra leading to his prostate. Id.; Dkt. No. 46-2 at 27-30. The government contends the surgery was necessary to save Wade's life because those pathology reports locate the cancer in the dome and trigone of Wade's bladder, as well as in the prostate. (Dtk. No. 47 at 4, 5).

**B.**

Following his surgery on October 1st, Wade developed serious, indeed life-threatening, complications. On October 2nd (the first post-operative day), Dawson contends that Wade was exhibiting symptoms of infection and renal failure. (Dkt. No. 46-1 at 3; Dkt. No. 46-2). By post-operative days three and four, he had developed signs of sepsis, respiratory failure, and exhibited symptoms suggesting that the ileal conduit constructed by McKinney may have failed. (Dkt. No. 46-1 at 4; Dkt. No. 46-2 at 17 - 19). By the fifth post-operative day, October 6th, Wade had become unresponsive. (Dkt. No. 46-2 at 6). By October 7th, he was severely septic. Id. at 2. According to the Clarksburg VA progress notes, his medical team suspected a urine leak or a failure of the stoma, an artificial and permanent opening in Wade's abdominal wall

3

**DAWSON v. UNITED STATES OF AMERICA**　　　　　　　　　　　　**1:11CV114**

**MEMORANDUM ORDER AND OPINION GRANTING IN PART
THE PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT [DKT. NO. 46]**

created by McKinney to allow the newly constructed ileal conduit to pass to the ostomy. (Dkt. No. 46-1 at 4; Dkt. No. 46-2 at 2).

The parties hotly dispute the cause of these post-surgical complications. Dawson maintains they stem from McKinney's abandonment of Wade, and his attendant failure to recognize emerging complications and intervene appropriately, particularly on the fifth, sixth, and seventh post-operative days. (Dkt. No. 46 at 4-5). The government defends McKinney's surgery and post-operative care, contending that he properly monitored Wade in compliance with the applicable standard of care by telephoning the Clarksburg VA and providing that specialists, including a nephrologist, were monitoring Wade's progress and needs. (Dkt. No. 47 at 5).

Despite these disagreements, the parties do not dispute that by the sixth post-operative day, October 7th, Wade's condition was dire enough to warrant emergency transfer to West Virginia University Hospitals ("WVUH") in Morgantown. (Dkt. Nos. 47; 46-2). There, on October 8th, surgeons performed an emergency exploratory laparotomy to reconstruct the failing ileal conduit. (Dkt. No. 46-5 at 6). Further, due to bowel necrosis, id. at 10, the surgeons also resected Wade's colon and constructed an additional stoma for the elimination of feces, leaving Wade with a second, permanent ostomy.

**DAWSON v. UNITED STATES OF AMERICA**                                    **1:11CV114**

**MEMORANDUM ORDER AND OPINION GRANTING IN PART
THE PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT [DKT. NO. 46]**

(Dkt. Nos. 46-1 at 5; 46-5 at 6-7). Following this surgery, Wade remained in the WVUH skilled nursing unit for sixteen weeks. (Dkt. No. 46-1 at 6). Eventually, he was transferred to the extended care facility at the Clarksburg VA, where he lived until his death on November 5, 2009. Id. at 2, 5.

C.

On July 27, 2011, Dawson, as the executor of Wade's estate, sued the government pursuant to the FTCA, 28 U.S.C. § 2671 et seq. Her complaint alleged several acts of medical negligence by McKinney (Count I), "warehousing" of Wade by the Clarksburg VA (Count II), and wrongful death (Count III). Later, the parties dismissed the warehousing count pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii).

On April 8, 2013, Dawson moved for partial summary judgment, contending that, under the decision of the Supreme Court of the United States in Molzof v. United States, 502 U.S. 301, 306 (1992), compensatory damages for Wade's pre-death pain and suffering are not subject to the FTCA's ban on punitive damages. (Dkt. No. 46-1 at 8). The government opposed the motion, relying on the Fourth Circuit's decision in Flannery v. United States, 718 F.2d 108 (4th Cir. 1983), which, it contends, was not overruled by Molzof and

5

**DAWSON v. UNITED STATES OF AMERICA** 1:11CV114

**MEMORANDUM ORDER AND OPINION GRANTING IN PART
THE PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT [DKT. NO. 46]**

controls the outcome here. In her reply, Dawson withdrew her wrongful death claim, stating that she intended to proceed to trial solely on her theory of medical negligence. She also reiterated why she believes damages for Wade's pre-death pain and suffering should be included in any award under the FTCA.

**II.**

Summary judgment is appropriate where the "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials" show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(c)(1)(A), (a). When ruling on a motion for summary judgment, the Court reviews all the evidence "in the light most favorable" to the nonmoving party. Providence Square Assocs., L.L.C. v. G.D.F., Inc., 211 F.3d 846, 850 (4th Cir. 2000). The Court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

**DAWSON v. UNITED STATES OF AMERICA**            **1:11CV114**

**MEMORANDUM ORDER AND OPINION GRANTING IN PART
THE PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT [DKT. NO. 46]**

**III.**

With that standard in mind, the Court turns to whether, Dawson, as the executrix of Wade's estate, may recover compensatory damages under the FTCA for Wade's pre-death pain and suffering. The government has interposed arguments based both on Flannery and its interpretation of 28 U.S.C. § 2674.

**A.**

The FTCA waives the sovereign immunity of the United States for "certain torts committed by federal employees." FDIC v. Meyer, 510 U.S. 471, 475 (1994). Nonetheless, it does limit the government's liability by precluding any recovery of "punitive damages." 28 U.S.C. § 2674. Whether a particular type of damages is punitive as opposed to compensatory is a question of federal law. Molzof, 502 U.S. at 305.

In Molzof, a unanimous Supreme Court concluded that the term "punitive damage" is a legal term of art with a long-established, widely accepted common law meaning that is generally understood to relate directly to the culpability of the tortfeasor. Id. at 307 (citing Silkwood v. Kerr-McGee Corp., 464 U.S. 238, 255 (1984)). As the Court explained,

7

**DAWSON v. UNITED STATES OF AMERICA**                                            **1:11CV114**

**MEMORANDUM ORDER AND OPINION GRANTING IN PART
THE PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT [DKT. NO. 46]**

> [l]egal dictionaries in existence when the FTCA was drafted and enacted indicate that "punitive damages" were commonly understood to be damages awarded to punish defendants for torts committed with fraud, actual malice, violence, or oppression. On more than one occasion, this Court has confirmed that general understanding. By definition, punitive damages are based upon the degree of the defendant's culpability. The common-law definition of "punitive damages" focuses on the nature of the defendant's conduct. As a general rule, the common law recognizes that damages intended to compensate the plaintiff are different in kind from "punitive damages."

Id. (internal quotations and citations omitted).

Molzof concluded that the FTCA "bars the recovery only of what are legally considered 'punitive damages' under traditional common-law principles." Id. at 312. In other words, the FTCA forbids only those damages defined by common law to be "puneitive," rather than damages that may be said to have a "punitive effect." Id. at 306.

Here, the compensation Dawson seeks is for Wade's pre-death pain and suffering proximately caused by McKinney's alleged malpractice. It is undisputed that West Virginia permits a plaintiff to recover such damages in a medical malpractice case, even if the patient has died. See W. Va. Code § 55-7B-8 (allowing limited damages for noneconomic loss caused by medical malpractice); id. § 55-7B-2(k) (defining "noneconomic loss" as

8

**DAWSON v. UNITED STATES OF AMERICA**                         **1:11CV114**

**MEMORANDUM ORDER AND OPINION GRANTING IN PART
THE PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT [DKT. NO. 46]**

"losses, including, but not limited to, pain, suffering, mental anguish and grief").

Dawson argues that to justify such an award she need only prove that the damages were proximately caused by McKinney's breach of the applicable standard of care, see id. § 55-7B-3, not that McKinney acted with the heightened culpability usually required to merit an award of punitive damages under West Virginia common law. See Syl. pt. 4, Meyer v. Frobe, 22 S.E. 58 (1895) (jury finding of "gross fraud, malice, oppression, or wanton, willful, or reckless conduct or criminal indifference" will support punitive damages). In her view, Molzof, not Flannery, controls the outcome here and allows a recovery of damages for Wade's pre-death pain and suffering because such damages are not punitive for the purposes of the FTCA.

### B.

Although Molzof's guidance on this issue is clear, the government argues that Flannery prohibits such compensatory damages under the FTCA. Flannery, decided nine years before Molzof, limited an award of damages under the FTCA to a plaintiff's actual economic damages, rather than compensatory damages otherwise available under West Virginia tort law. See 718 F.2d at 111. Pursuant to Flannery,

**DAWSON v. UNITED STATES OF AMERICA**                  **1:11CV114**

**MEMORANDUM ORDER AND OPINION GRANTING IN PART
THE PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT [DKT. NO. 46]**

a damage award was punitive under the FTCA if it "[gave] more than the actual loss suffered by the claimant," id., even if the award would have been "treated and labeled under state law as 'compensatory.'" Id. at 110.[1]

A careful review of the litigation history of Molzof establishes that the government's reliance on Flannery is misplaced. In Molzof v. United States, 911 F.2d 18, 21-22 (7th Cir. 1990), overruled by 502 U.S. 301, 312, the Seventh Circuit explicitly followed Flannery and held that a comatose plaintiff could not recover compensatory damages for pain and suffering under the FTCA because those damage were punitive for purposes of the FTCA:

> Since we believe that the Act excludes damages in excess of those necessary to compensate for injuries suffered by the plaintiff and because we are equally confident that an award of damages for loss of enjoyment of life can in no way recompense, reimburse or otherwise redress a comatose patient's uncognizable loss, **we adopt the Fourth**

---

[1] Because the comatose plaintiff in Flannery could not experience the loss of enjoyment of life for which the jury had awarded him damages, a divided panel of the Fourth Circuit held that he had been compensated beyond his actual loss, thereby making the award punitive under the FTCA. Id. at 111. In arriving at its holding, the majority expressly rejected the "deterr[ing] and punishing attributes" that traditionally had defined punitive awards as determinative under the FTCA. Id.

10

**DAWSON v. UNITED STATES OF AMERICA**                                    **1:11CV114**

**MEMORANDUM ORDER AND OPINION GRANTING IN PART
THE PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT [DKT. NO. 46]**

---

>  **Circuit's view** and deny the award under the circumstances
> and findings in this case.

Id. (citing Flannery, 718 F.2d at 111) (emphasis added).[2]

The Supreme Court flatly rejected this analysis. See Molzof, 502 U.S. at 304 - 306 (contrasting Molzof's argument that punitive damages are to be defined by reference to common law with the government's view, drawn from Flannery, that "damages that are not strictly compensatory are necessarily 'punitive damages' barred by the" FTCA). Relying on the plain language of the FTCA, it concluded that "the Government's reading of [the FTCA's ban on punitive damages] is contrary to the statutory language," id. at 306, and held that the FTCA "bars the recovery only of what are **legally** considered 'punitive damages' under traditional common-law principles." Id. at 312 (emphasis in original). This unambiguous rejection of the Seventh Circuit's decision that had rested its reasoning squarely on Flannery fatally undermines the government's

---

   [2]   When adopting Flannery's view of punitive damages under the FTCA, the Seventh Circuit rejected the line of cases from other circuit courts, including the Second and Sixth, upholding such a damage award as compensation to a plaintiff – comatose or otherwise – for his loss. Id. (citing Rufino v. United States, 829 F.2d 354, 362 (2d Cir. 1987) (explicitly rejecting Flannery); Kalavity v. United States, 584 F.2d 809, 811-12 (6th Cir. 1978)).

**DAWSON v. UNITED STATES OF AMERICA**                                1:11CV114

**MEMORANDUM ORDER AND OPINION GRANTING IN PART
THE PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT [DKT. NO. 46]**

argument that <u>Flannery</u> remains good law following <u>Molzof</u>. Accordingly, the Court declines to follow the rule from <u>Flannery</u> in this case.

**C.**

The government next contends that the second paragraph of 28 U.S.C. § 2674 bars any recovery for compensatory damages beyond actual economic loss whenever a suit is brought for the benefit of the decedent's surviving beneficiary.[3] (Dkt. No. 47 at 8-10). This argument fails for two reasons. First, the applicability of the second paragraph of § 2674 hinges on its opening clause: "[i]f, however, in any case wherein death was caused . . . ." <u>Id.</u> § 2674. "Caused" indicates that the statute applies to tortious acts causing death, <u>i.e.</u> wrongful death actions. As this case is no longer a wrongful death action, the government's argument is inapposite.

---

[3]    The second paragraph of § 2674 states,

If, however, in any case wherein death was caused, the law of the place where the act or omission complained of occurred provides, or has been construed to provide, for damages only punitive in nature, the United States shall be liable for actual or compensatory damages, measured by the pecuniary injuries resulting from such death to the persons respectively, for whose benefit the action was brought, in lieu thereof.

**DAWSON v. UNITED STATES OF AMERICA**            **1:11CV114**

**MEMORANDUM ORDER AND OPINION GRANTING IN PART
THE PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT [DKT. NO. 46]**

Moreover, it is notable that, when Congress added the second paragraph to § 2674 in 1947, it was responding to an anomaly in the wrongful death statutes of two states, Massachusetts and Alabama, limiting the recovery of damages in wrongful death actions to punitive damages. See Mass. Bonding & Ins., Co. v. United States, 352 U.S. 128, 130-32 (1956). Because the FTCA prohibits punitive damages, a plaintiff proceeding under the FTCA in either Massachusetts and Alabama in 1947 was barred from recovering any damages at all in a wrongful death case. See Molzof, 502 U.S. at 305 ("the extent of the United States' liability under the FTCA is generally determined by reference to state law").

To correct this inequity, Congress added the second paragraph of § 2674. Mass. Bonding, 352 U.S. at 132. Contrary to the government's argument, however, this addition did not further restrict the type of damages available under the FTCA when a plaintiff is deceased, but rather enlarged them by permitting plaintiffs in Massachusetts and Alabama to recover compensatory damages unavailable under state law.

Finally, to the extent that, during oral argument, the government asserted that the FTCA limits the types of damages available to Dawson because Wade's medical negligence claim arises

13

**DAWSON v. UNITED STATES OF AMERICA**                          **1:11CV114**

**MEMORANDUM ORDER AND OPINION GRANTING IN PART
THE PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT [DKT. NO. 46]**

under West Virginia's survival statute, W. Va. Code § 55-7-8, that argument is equally unavailing. This Court is unaware of any case law supporting such a limitation, and the government has cited none. Had Congress intended to preclude certain damages otherwise available under a state's survival statute, it presumably would have said so. See United States ex rel. Carter v. Haliburton, 710 F.3d 171, 193 (4th Cir. 2013) (when "[f]aced with statutory silence, we presume that Congress is aware of the legal context in which it is legislating") (quoting Palisades Collections, L.L.C. v. Shorts, 552 F.3d 327, 334 n.4 (4th Cir. 2008)). Thus, inasmuch as Congress was aware of common law and statutory enactments providing for the survival of certain tort claims, see, e.g., Restatement (Second) of Torts § 900 (1979), and did not preclude them, the Court concludes that the FTCA does not bar Dawson's claim of medical negligence due to Wade's death.

**IV.**

For the reasons discussed, the Court concludes that compensatory damages for Wade's pre-death pain and suffering proximately caused by Dr. McKinney's alleged medical negligence are not punitive in nature, survive his death, and, in an appropriate case, are recoverable under the FTCA. Accordingly, it **GRANTS IN**

**DAWSON v. UNITED STATES OF AMERICA**                                **1:11CV114**

**MEMORANDUM ORDER AND OPINION GRANTING IN PART
THE PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT [DKT. NO. 46]**

**PART** Dawson's motion for partial summary judgment as to that legal issue. (Dkt. No. 46).

It is so **ORDERED.**

The Court directs the Clerk of Court to transmit copies of this Order to counsel of record.

DATED: June 14, 2013.

                                                             /s/ Irene M. Keeley
                                                             IRENE M. KEELEY
                                                             UNITED STATES DISTRICT JUDGE